THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EAGLE WEST INSURANCE COMPANY, as subrogee of Cypress Place Condominium Owners' Association,<br><br>Plaintiff,<br>v.<br><br>WATTS REGULATOR CO. and AMTROL INC.,<br><br>Defendants. | CASE NO. C16-0781-JCC<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND DEFENDANT'S MOTION TO CONTINUE TRIAL |

This matter comes before the Court on Plaintiff's motion to compel (Dkt. No. 19) and Defendant's motion to continue trial (Dkt. No. 23). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS both motions for the reasons explained herein.

**I.   BACKGROUND**

On approximately May 20, 2015, there was a leak at a condominium complex owned by Cypress Place Condominium Owners' Association. (Dkt. No. 1-1 at 3.) The leak originated from a water expansion tank manufactured by Defendant Amtrol, Inc. (*Id.*) Plaintiff Eagle West Insurance Company's expert, Kent Engineering, produced a preliminary opinion regarding the cause of the leak on December 21, 2015. (Dkt. No. 24-1.) Kent Engineering attributed the leak to

a rubber bladder failing because of a faulty automatic control valve (ACV) manufactured by Defendant Watts Regulator Company.[1] (*Id.* at 6.)

Plaintiff served discovery requests on Defendant on May 20, 2016, while the case was in state court. (Dkt. No. 19 at 2; Dkt. No. 1). Watts then removed the case to federal court. (Dkt. No. 1.) Defendant did not respond to the initial discovery requests, prompting Plaintiff to send a letter requesting responses on June 28, 2016. (Dkt. No. 19 at 3.) Afterwards, Defendant and Plaintiff exchanged correspondence regarding the appropriate time to begin discovery because of the removal. (Dkt. No. 30-1 at 18.) Defendant first responded to the discovery requests on September 13, 2016. (Dkt. No. 20-2.) On April 20, 2017, Plaintiff and Defendant agreed to extend discovery from June 16, 2017, until July 7, 2017. (Dkt. No. 14.)

On June 15, 2017, Plaintiff revised its theory as to what caused the damage. (Dkt. No. 36-1.) Rather than blame Watts's ACV, Plaintiff stated that Defendant negligently designed the expansion tank so that an internal schraeder valve would puncture the rubber bladder. (*Id.*) Then on June 20, 2017, Plaintiff and Watts stipulated to Watts's dismissal. (Dkt. No. 16.) Subsequently, on June 21, 2017, Kent Engineering supplied an updated report as to the suspected cause of the failure, stating Defendant's failure to coat the air side of the expansion tank led to internal corrosion that caused the bladder to fail. (Dkt. No. 24-1 at 16.) Also on that day, Plaintiff took a Rule 30(b)(6) deposition of Lynn A. Taylor, manager of Defendant's legal and warranty administration, seeking information regarding filed claims of expansion tank failures. (Dkt. No. 20-7.)

Defendant later provided Plaintiff with a report and opinion from its fact and expert witness, Robert Manser, an engineer at Amtrol, on July 7, 2017. (Dkt. No. 29 at 8.)

Plaintiff filed the present motion to compel discovery on July 5, 2017, and also argues that Manser should be excluded as a witness because he was not timely disclosed. (Dkt. No. 19.)

---

[1] Watts has since been dismissed from this suit. (Dkt. No. 18.) Going forward, the term "Defendant" refers only to Amtrol, Inc.

ORDER GRANTING PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE TRIAL
PAGE - 2

Defendant filed the current motion to continue soon after, on the final day of the extended discovery. (Dkt. No. 23.) Trial is currently scheduled for October 16, 2017. (Dkt. No. 29 at 8.)

## II. DISCUSSION

### A. Legal Standard

The Court has broad discretion to decide whether to compel disclosure of discovery. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When addressing proportionality, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Similarly, the Court has broad discretion in granting modifications to the schedule. "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension. If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (internal citations omitted). For example, in *Escandon v. Los Angeles*, 584 F. App'x 517, 519 (9th Cir. 2014), the district court did not abuse its discretion when it denied a motion to continue because the moving party failed to propound any discovery, compel discovery responses, and file the motion before the expiration of discovery. Four factors are used to analyze motions to modify the trial schedule: (1) the diligence of the moving party; (2) the need for continuance; (3) inconvenience for the Court and the non-moving party; and (4) the harm caused by denial of a continuance. *United States v. 2.61 Acres of Land*, 791 F.2d 666, 671 (9th Cir. 1985).

//

**B. Motion to Compel**

Plaintiff's motion to compel must seek information that is both relevant and proportional to the controversy.[2] Fed. R. Civ. P. 26(b)(1). Plaintiff seeks responses to Request for Production (RFP) No. 6 and Interrogatory No. 10 and argues that Ms. Taylor was unprepared for her deposition in violation of the discovery rules. (Dkt. No. 19 at 2.)

Two of these issues warrant no further consideration by the Court. First, Defendant's response brief indicates that it has already satisfied Interrogatory No. 10. (*See* Dkt. No. 30-1.) Second, in its initial motion, Plaintiff complains that Ms. Taylor was unprepared at the deposition, (Dkt. No. 19 at 2), but the parties do not address this issue any further and Plaintiff evidently derived useful information from the deposition. (Dkt. No. 19 at 7; Dkt. No. 33 at 4.) Accordingly, the Court will address only RFP No. 6.

RFP No. 6 is a reasonable request. Plaintiff asked Defendant to "[p]roduce all correspondence, expert reports, pleadings and discovery responses relating to any claims made, whether verbal or written, in the last 10 years alleging property damages or personal injury caused by [Defendant's] Tank, including litigated claims." (Dkt. No. 20-2 at 17–18.) Defendant's response that its "knowledge of prior, similar claims is not an element of plaintiff's defective design or improper instruction claim" rings hollow. (Dkt. No. 29 at 6.) The requested information would provide insight as to how the tank functions and what types of defects or failures have occurred. This information, while not central to Plaintiff's claim, is relevant.

Furthermore, Defendant is primarily in control of this information. Some of the previously litigated cases may be available to Plaintiff, but most will not be accessible without discovery. While both parties have access to considerable resources, Plaintiff's resources do not enable it to procure information that is solely in Defendant's hands.

---

[2] The Court notes that Plaintiff's briefing omitted the proportionality element, which was a substantial change to this rule in recent years. (*See* Dkt. No. 19.) Nonetheless, the Court considered the element and, as discussed herein, found that it was met.

1    Moreover, Defendant is a sophisticated manufacturer that routinely maintains records of
2    product failure claims that are filed against it. (*See* Dkt. No. 20-7.) To produce these documents
3    is not a substantial burden. Defendant possesses these documents and needs only to duplicate
4    them and send them to Plaintiff. (*See id.*) Relatedly, the amount in controversy here is still
5    substantial: $168,248.46. (Dkt. No. 1.) Defendant has not demonstrated disproportionate costs to
6    produce this information relative to the amount in controversy.

Finally, Defendant's argument about admissibility is not relevant to the question of discoverability. "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26 (b)(1).

Plaintiff's motion to compel is GRANTED. The Court ORDERS Defendant to produce all documents responsive to RFP No. 6. Because the Court grants Plaintiff's motion, Defendant's request for attorney fees is DENIED. (*See* Dkt. No. 29 at 9.)

**C. Motion to Continue**

Defendant must demonstrate good cause and diligence to be entitled to a trial continuance. *See Zivkovic,* 302 F.3d at 1087. The parties previously agreed to an extension of the discovery period. Plaintiff argues that Defendant has not used the extension properly and that the Court should not grant it more time to remedy its mistake. (Dkt. No. 25 at 2.)

1. Good Cause

Defendant argues there is good cause to alter the trial schedule for four reasons: (1) Plaintiff's expert fundamentally changed its opinion; (2) Plaintiff refuses to share photos taken to support its expert's opinion; (3) Watts was dismissed from the case; and (4) Defendant was purchased by a new parent company, Worthington Industries. (Dkt. No. 23 at 1.) The Court will analyze each of these reasons in turn.

*Change in Expert Opinion:* Defendant asserts that Plaintiff's theory as to causation has changed repeatedly, making new discovery necessary to effectively proceed at trial. (Dkt. No. 35 at 3.) Kent Engineering's original report, dated December 21, 2016, opined that Watts's ACV

malfunctioned, causing over-pressurization in the rubber bladder and resulting in rupture. (Dkt. No. 24-1 at 4–6.) According to the initial report, this ruptured bladder in turn allowed water to fill the air side of the expansion tank, which corroded and eventually leaked, damaging the property. (*Id.*) On June 15, 2017, Plaintiff updated its position in response to Defendant's request for admissions, stating that due to Defendant's faulty design, the bladder instead was punctured by a schraeder valve stem within the tank, which caused the corrosion and, ultimately, the leak. (Dkt. No. 36-1 at 3–4.) Finally, in a revised opinion submitted on June 21, 2017, the day after Watt's dismissal, Kent Engineering opined that the cause of the initial corrosion of the expansion tank was not the ACV or the schraeder valve. (Dkt. No. 24-1 at 16–20.) Instead, according to the new opinion, it was caused by Defendant's failure to coat the air side of the expansion tank which allowed condensation to form due to improper pressurization during installation. (*Id.*)

While discovery is a fluid process, the timing of some disclosures would put litigating parties at an unfair disadvantage. The suspected cause of the rubber bladder failure is a critical fact in this case, and one that will be hotly contested. After nearly a year and a half of preparation based on one theory of causation, Defendant suddenly found itself faced with two totally new theories over the course of a week. (Dkt. No. 36-1.) As Plaintiff points out, it is required to update its disclosures. (Dkt. No. 25 at 2.) However, these changes are not simple clarifications. (*Id.*) This change constitutes good cause to seek a new schedule.

*Production of Photos:* In addition, Plaintiff's expert's opinion is based upon new photos secured through testing, and these are crucial pieces of evidence that Defendant's experts should be allowed to access. Plaintiff's expert allegedly used these photos to form his new opinion. (Dkt. No. 24-1 at 18.) Access to these photos and evaluation by opposing experts is necessary to ensure vigorous and thorough assessment of the evidence. These facts also support Defendant's argument that good cause exists.

*Watts's Dismissal:* Defendant also argues that it would be unfair to maintain the same schedule because of Watts's dismissal from the case. (Dkt. No. 23.) Defendant has not identified

1  any specific needs created by this departure. Defendant should have already been propounding
2  discovery requests from Watts as a co-defendant, and thus, sudden departure does not necessitate
3  an extension of this period.

4  *New Parent Company:* Finally, Defendant argues that its recent purchase by Worthington
5  Industries justifies a continuation of trial. (*Id*.) Without demonstrating a shifting of files or
6  consolidation of administrative capacities, Defendant still likely exists as a separate entity and
7  functions as such. *Cf. Aguayo-Becerra v. Ash Grove Cement Co*., Case No. C15-1561-JCC, Dkt.
8  No. 36 at 4 (W.D. Wash. 2016) (noting that defendant company was bought and dismantled
9  several years prior, and attorneys had difficulty in locating responsive documents). Simple
10 transfer of ownership does not demonstrate need and is insufficient to persuade the Court to alter
11 its trial schedule.

12 Taken in totality, the first two factors demonstrate good cause, and the other two factors
13 do not demonstrate lack thereof. Accordingly, the Court finds good cause to alter the case
14 schedule.

15 II. Diligence

16 Defendant must also demonstrate that it was diligent in discovery before the Court will
17 grant a motion to continue. *Zivkovic,* 302 F.3d at 1087. Defendant did serve Plaintiff with
18 discovery promptly, on November 11, 2016, during Defendant's period of unavailability. (Dkt.
19 No. 19 at 3.) Defendant also submitted several requests for admissions to clarify Plaintiff's
20 position. (Dkt. Nos. 24-1, 36-1.) The fact that Defendant has recently served several requests for
21 information and depositions underscores the significance of these alterations to Plaintiff expert's
22 opinion. (*See* Dkt. Nos. 24-1, 25) (noting that Defendant had deposed its expert witness on the
23 new opinion). The late stage of this opinion change is precisely why Defendant is requesting
24 more time, not because it failed to exercise diligence.

25 *Escandon v. Los Angeles* provides a useful illustration as to a non-diligent party.
26 *Escandon v. Los Angeles,* 2012 WL 12888832 (C.D. Cal. Aug. 14, 2012) *aff'd,* 584 F. App'x

ORDER GRANTING PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE TRIAL
PAGE - 7

517, 519 (9th Cir. 2014). There, the court ordered all motions to be filed timely and well in advance of the discovery cut off. *Id*. at 3. However, the plaintiff delayed filing any discovery requests until six months into an eight month discovery period. *Id.* In fact, the plaintiff waited until after the end of the discovery period and the last possible date to file any motions to ask for more time to complete discovery. *Id.* Even after the close of the motion filing period and nearly a month and a half after discovery, the plaintiff propounded a motion to compel discovery. *Id.* If the plaintiff in *Escandon* was a non-diligent party, then Defendant here is the antithesis. Defendant properly filed its motion before the end of discovery, used the time to serve discovery requests on the opposing party, and complied with the trial schedule. (*See* Dkt. Nos. 19, 23, 29, 33, 36.)

Defendant has shown good cause and diligence. Denying Defendant's motion to continue would put Defendant at a significant disadvantage at trial. Plaintiff will also benefit from further discovery with further access to Defendant's new expert, Mr. Manser.

Accordingly, Defendant's motion to continue trial is GRANTED. The jury trial in this case is CONTINUED from October 16, 2017 to Tuesday, February 20, 2018 at 9:30 a.m. Dispositive motions shall be filed no later than 90 days before trial. The discovery cutoff shall be 120 days before trial. Rule 39.1 mediation shall be completed by November 17, 2017. The pretrial order, trial briefs, and proposed voir dire, jury instructions, and verdict forms shall be due Monday, February 12, 2018. Any responses or objections to the pretrial filings shall be due Wednesday, February 14, 2018. Regarding the proposed jury instructions, the parties shall indicate which instructions they agree upon and which instructions are contested, along with the basis for challenging each contested instruction.

Because the motion to continue is granted, the issue of Defendant's new expert is moot.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel (Dkt. No. 19) and Defendant's motion to continue (Dkt. No. 23) are GRANTED.

DATED this 2nd day of August, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT'S MOTION TO
CONTINUE TRIAL
PAGE - 9